# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MEDILINK INSURANCE COMPANY, LIMITED,

        Plaintiff/Counter-Defendant,

v.                                  Case No. 09-CV-13692
                                  HON. ROBERT H. CLELAND

COMERICA BANK,

        Defendant/Counter-Plaintiff.

_____/

## OPINION AND ORDER DENYING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending before the court is a motion for summary judgment, filed by Defendant/Counter-Plaintiff Comerica Bank ("Comerica" or "Defendant") on December 17, 2009. Having reviewed the briefs, the court concludes a hearing on this motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendant's motion.

## I. INTRODUCTION

On August 28, 2009, Plaintiff/Counter-Defendant Medilink Insurance Company, Ltd. ("Medilink" or "Plaintiff"), a Cayman Islands corporation, sued Defendant, a Texas banking association, in Wayne County Circuit Court. Defendant removed the case to this court on September 17, 2009 based on diversity jurisdiction. Plaintiff filed an amended complaint on November 12, 2009, alleging the following counts: (1) statutory conversion, (2) common law conversion, (3) constructive trust / third party beneficiary, (4) negligence, (5) breach of fiduciary duty, and (6) unjust enrichment. Plaintiff seeks

damages in the amount of $730,193.50 plus treble damages for Counts I and II, $1,495,241.50 for Counts III, IV, and V, and $730,193.50 for Count VI. On November 27, 2009, Defendant filed a counterclaim for breach of contract.

On December 17, 2009, Defendant filed a motion for summary judgment. It argues that a judgment obtained by Plaintiff in an earlier case before the Honorable Nancy G. Edmunds[1] precludes the claims brought by Plaintiff in this case.

## II. BACKGROUND

In the prior action before Judge Edmunds, Medilink sued John P. Bender and two entities, J.P. Bender and Associates, Inc. and Bender, Inc. (collectively the "Bender Defendants"). Medilink is a reinsurance company, and from approximately 1985 to September 2007, the Bender Defendants served as third party claims administrators processing claims made against Medilink's reinsureds in Michigan. (Am. Compl. ¶ 7, Def.'s Mot. Ex. 1.) These claims arose out of litigation against hospitals and physicians reinsured by Medilink. (*Id.* ¶ 8,9.)

In order to process the claims, Medilink established a trust account at Comerica, funded by the insurance proceeds that Medilink received. (Dunleavy Aff. ¶ 3, Def.'s Mot. Ex. 11.) When Medilink was required to pay for settlements, legal fees, and costs, the Bender Defendants would submit indemnity payment requests and expense payment requests to Medilink in the Cayman Islands. (Am. Comp. ¶ 18, Def.'s Mot. Ex.

---

[1]The caption to Plaintiff's complaint noted that a "civil action between Plaintiff and another party arising out of some of the transactions or occurrences alleged in the complaint has been previously filed in the U.S. District Court for the Eastern District of Michigan, where it was given docket number 5:07-cv-15019 and was assigned to Judge Nancy Edmunds." It has been determined, however, that the present case will not be reassigned as a companion case to case no. 07-cv-15019. E. D. Mich L. R. 83.11(b)(7).

1.)  These requests would indicate how much money Bender needed in order to pay a particular claim.  (Dunleavy Aff. ¶ 4, Def.'s Mot. Ex. 11.)  Then, Medilink would send a request to Comerica Bank in Detroit authorizing release of the requested amount from its trust account.  (*Id.*)  Comerica would then transfer money from the trust account into one of three accounts established by the Bender Defendants, account numbers 2251007866 ("account 7866"), 1851911154 ("account 1154") and 1851827749 ("account 7749") (collectively the "Medilink Bender Accounts").  (*Id.* ¶ 3.)  The Bender Defendants would pay the claimants out of the Medilink Bender Accounts.

Beginning in 2005, the Bender Defendants "caused certain illegal, fraudulent and inappropriate transactions to occur."  (Pl.'s Am. Compl. ¶ 22, Def.'s Ex. 1.)  Specifically, Bender submitted payment requests to Medilink in excess of the settlement amount of the cases.  (Pl.'s Am. Compl. Against the Bender Defendants, Def.'s Ex. 7.)  Medilink would approve the request and have Comerica transfer this amount into the Medilink Bender accounts.  (*Id.*)  Bender would then pay out the actual settlement amount and retain for himself the difference, often transferring the amounts to various personal accounts unaffiliated with Medilink.  (*Id.*)

On August 29, 2007, Comerica became suspicious of one of Bender's transactions.  (Am. Compl. ¶ 25, Def.'s Ex. 1.)  Bender cashed a $318,048 check drawn from one of the Medilink Bender Accounts which was payable to a plaintiff and law firm and immediately deposited the money into another account unaffiliated with Medilink that Bender maintained at Comerica, account number 1850970979 (the "Carlisle Account").  (*Id.*)  Comerica notified Marsh, Inc., a company that handled Medilinks's claims and risk management, about this transaction.  (*Id.* ¶ 26.)  Marsh, Inc. conducted

an investigation and sent an email to Comerica on September 12, 2007, identifying ten disputed transactions that Bender had requested.  (*Id.* ¶¶ 27, 28.)

Comerica froze the Medilink Bender Accounts and would not process any transactions from these accounts.  (*Id.* ¶ 30.)  At the time the accounts were frozen, Medilink alleges that there was $797,000 in the three Medilink Bender Accounts.  (*Id.* ¶ 76.)  In October 2007, Medilink alleges that Comerica "unfroze the three Medilink Bender Accounts and permitted money to be transferred by John Bender for purposes other than paying Plaintiff's obligations."  (*Id.* ¶ 26.)  Medilink claims that a constructive trust was created as to the $797,000 at the time the three Medilink Bender Accounts were frozen (*id.* ¶ 76), that Comerica was negligent in releasing this money to Bender in October and November 2007 when it should have known the money was to be used solely for the benefit of Medilink (*id.* ¶ 86), and that Comerica breached its fiduciary duty by allowing Bender to empty the $797,000 remaining in the accounts (*id.* ¶ 98).

According to Medilink, on October 1, 2007, Comerica also applied $380,193.50 from one of Bender's personal accounts, account number 6819014520, in order to pay down one of Bender's personal loans that he had with Comerica.  (*Id.* ¶ 37; Pl.'s Resp. Ex. 3.)  A Comerica loan officer, John Ryan, who was assigned to Bender's accounts in September 2007, approved the transaction.  (Am. Compl. ¶¶ 34, 38, Def.'s Mot. Ex. 1.).  Comerica does not dispute that it collected one of its debts (Def.'s Ans. to Am. Compl. ¶ 37); however, it disputes Medilink's allegation that Ryan and Comerica knew the money in account number 6819014520 "had originally been transferred improperly from one of the three Medilink Bender accounts and was money that did not properly belong to

Bender but instead belonged to Plaintiff."  (Am. Compl. ¶ 38, Def.'s Mot. Ex. 1; Def.'s Ans. to Am. Comp. ¶ 38.)

Also, on October 1, 2007, Comerica sent Bender a notice of default and demanded payment in full of various outstanding liabilities.  (Pl.'s Resp. Ex. 4 at 8.)  On October 16, 2007, Comerica, the Bender Defendants, and others entered into a forbearance agreement in which Comerica agreed to forbear until January 15, 2008. (*Id.* at 1.)  The forbearance agreement required Bender to "open a blocked account at Bank, being account number 1852367687 [(the "Cash Collateral Account")] and deposit into the [Cash Collateral Account] the sum of $350,000."  (*Id.* at 2.)  Medilink alleges that Comerica "was aware that the $350,000 utilized to fund the blocked account was money belonging to Plaintiff and not Mr. Bender or any of his affiliated entities, and that the money debited in the account was to be utilized solely for the obligations of Plaintiff." (Am Compl. ¶ 42, Def.'s Mot. Ex. 1.)  Medilink further alleges that it "requested Comerica return the $350,000 to Plaintiff, but Comerica declined to do so, and ultimately claimed that Mr. Bender had taken the money in January 2008."  (*Id.* ¶ 43.)

On November 27, 2007, Medilink sued the Bender Defendants in the case referenced above before Judge Edmunds, case number 07-cv-15019.  The next day, Judge Edmunds issued a temporary restraining order enjoining the Bender Defendants from withdrawing funds from the Medilink Bender Accounts.  However, by the time the temporary restraining order was served on Comerica, the Medilink Bender Accounts had been depleted to $1,239.24.  (Def.'s Statement of Material Facts ¶ 12.)

Medilink sought a second temporary restraining order on January 3, 2008. (Def.'s Mot. Ex. 5.)  In its motion, it sought to enjoin the Bender Defendants from

withdrawing money from the Cash Collateral Account that was established pursuant to the forbearance agreement with Comerica. (*Id.*) The motion described how the Bender Defendants withdrew $120,000 from account 7749 (one of the Medilink Bender Accounts) on October 19, 2007, and deposited the money in the Cash Collateral Account. (*Id.* ¶ 6.) The motion also notes that the Bender Defendants withdrew $230,000 from account 1154 (another of the Medilink Bender Accounts) on the same day and deposited the money in the Cash Collateral Account. (*Id.* ¶ 7.) In its brief in support of the motion, Medilink discussed the reason for the ineffectiveness of the first temporary restraining order, stating that "[u]nfortunately, for whatever reason, Comerica Bank lifted the 'freeze' on the accounts in question on either October 18 or October 19, 2007," and allowed the Bender Defendants to transfer $350,000 into the Cash Collateral Account. (*Id.* at 2-3.) At the time, Medilink did "not know the explanation for the creation of the new cash collateral account on October 18, 2007," but that it was "tempted to speculate that Comerica Bank required the creation of this account and the payment of the funds into this account by the [Bender] Defendants for some reason that may not be associated with the Plaintiff." (*Id.* at 3.) Judge Edmunds issued a second temporary restraining order on January 17, 2008, enjoining the Bender Defendants from withdrawing funds from the Cash Collateral Account. (Def.'s Mot. Ex. 6.)

On March 18, 2008, Judge Edmunds granted in part Bender's motion to stay the proceedings, which he filed because of the pending criminal investigation against him.[2]

---

[2]John Bender pleaded guilty to interstate transportation of property taken by fraud, 18 U.S.C. § 2314, on December 12, 2008, before the Honorable Julian Abele Cook. (Def.'s Mot. Ex. 13.F.)

(Def.'s Mot. Ex. 8.)  Judge Edmunds granted the motion as to discovery but allowed Medilink to "proceed with third party discovery from Comerica Bank, including deposing Comerica employees."  (*Id.*)

After discovery, Medilink filed an amended complaint against the Bender Defendants on July 22, 2008.  (Def.'s Mot. Ex. 7.)  The complaint alleged eleven counts: (1) embezzlement, (2) common law conversion, (3) fraudulent misrepresentation, (4) civil conspiracy, (5) breach of fiduciary duty, (6) innocent misrepresentation, (7) unjust enrichment, (8) constructive trust, (9) negligence of corporate defendants, (10) reinsurance recoveries, and (11) action to recover possession of funds.  (*Id.*)  Each of the counts requested $4,556,439.87 in damages, except for counts ten and eleven. (*Id.*)  In count eleven, Medilink noted the transfers to the Medilink Bender Accounts in 2007, described the freezing and unfreezing of the funds by Comerica, and sought equitable rescission of the transfers.  (*Id.* at 42-43).  It requested that the court "order that all of such funds up to $623,161.13 be immediately released to the Plaintiff by the Comerica Bank" and that the Bender Defendants account for any funds missing if $621,161.13 is not available in the accounts.  (*Id.* at 43-44.)

On January 22, 2009, Medilink filed a motion for summary judgment "against the [Bender] Defendants jointly and severally, in the amount of $4,749,920.00 trebled to $14,249,760.00 based on the intentional torts and other intentional misconduct of the [Bender] Defendants."  (Def.'s Mot. Ex. 13.A at 1.)  Medilink argued that the entities associated with Bender were liable for his actions as his alter ego, and that the Bender Defendants were liable "based on the intentional torts of fraudulent misrepresentation, embezzlement and conversion."  (*Id.* at 3, 19-21.)  Medilink stated that it had

demonstrated that "the total amount of money which was stolen by Bender from Medilink is $4,749,920.00," and it requested "summary judgment in its favor and against the Defendant jointly and severally in that amount." (*Id.* at 21.)

The Bender Defendants did not file a response to the motion for summary judgment and were not present at the hearing on the motion, which took place on February 25, 2009. (Def.'s Mot. Ex. 14.) At the hearing, the following exchange occurred:

|  |  |
|---|---|
| [Judge Edmunds:] | Well, I don't have any problem giving you summary judgment with respect to the underlying $4,700,000, and stating in the order it's clear that the moneys were obtained through fraud. I am not comfortable saying that they involve embezzlement. I think embezzlement is a different animal. And I'm not comfortable saying that they involve conversion, although conversion seems a closer case to me, but at least – well, and I know that that may impact your ability to get treble damages, but frankly I don't see that it's likely that you're ever going to get treble damages in this. |
| [Medilink's Counsel:] | The ability to collect, I agree with that, is very marginal, Your Honor. |
| [Judge Edmunds:] | So why don't you submit an order granting your motion with respect to the $4,700,000 and change that you articulate in here, with specific findings that the amounts were obtained by fraud and not dischargeable in bankruptcy, and we'll leave out the embezzlement and conversion points. I'm just going to not rule on those, okay? |
| [Medilink's Counsel:] | All right. |
| [Judge Edmunds:] | If you'll submit an order, I'll sign it. |

(Def.'s Mot. Ex. 14 at 3-4.)

On March 5, 2009, Judge Edmunds issued an order granting Medilink's motion

for summary judgment.  The order stated:

> IT IS ORDERED that judgment is entered in favor of Plaintiff, Medilink
> Insurance Company Limited, and against the Defendants, John P. Bender,
> J.P. Bender & Associates, Inc. and Bender, Inc., jointly and severally, in
> the amount of Four Million, Seven Hundred and Forty-Nine Thousand,
> Nine Hundred and Twenty ($4,749,920.00) Dollars. The Court finds
> Defendants have committed fraud and obtained money from the Plaintiff in
> that amount. The Court finds that this judgment is based on money
> obtained by Defendants through fraud or defalcation as defined in 11
> U.S.C. § 523(a).
>
> This is a final order disposing of all remaining claims in this case.

(Def.'s Mot. Ex. 15.)  A judgment was issued on the same day.  It provided:

> The Court having reviewed the pleadings and having heard argument on
> February 25, 2009; and for the reasons set forth on the record and in an
> Order dated March 5, 2009, and filed herein;
>
> IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's motion for
> summary judgment is GRANTED, Defendants are required, jointly and
> severally, to pay Plaintiff Four Million, Seven Hundred and Forty-Nine
> Thousand, Nine Hundred and Twenty ($4,749,920.00) Dollars, and the
> case is hereby DISMISSED.

(Def.'s Mot. Ex. 2.)

Medilink has engaged in collection efforts in order to satisfy this judgment.  (Aff.

of Gary Ley, Chairman of Medilink's Board of Directors, Pl.'s Resp. Ex. 1.)  It has

received the following property in the course of its efforts: (1) a pontoon boat sold for

$10,628.58, (2) a Ford Thunderbird not yet sold, (3) eight pieces of antique jewelry not

yet sold, and (4) 399 antique dolls previously in the possession of the U.S. Marshal

Service and sold for an unknown price at an auction house.  (*Id.* ¶ 3.)  Medilink expects

to receive significantly less than $1,000,000 for these items.  (*Id.*)  In addition, Medilink

has received $25 in restitution from Bender and his rights to the proceeds of the sale of a condominium in Colorado, estimated at $100,000.  (*Id.* ¶ 4.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing' –that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter,* 369 F.3d 906, 909 (2004) (citing *Celotex*, 477 U.S. at 325).  The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must put forth

enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587 (1986)). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

Defendant argues that, based on the prior litigation against the Bender Defendants, it is entitled to summary judgment on Plaintiff's claims pursuant to Mich Comp. Laws §§ 600.2956, 600.2957, 600.6304 (the "Michigan Tort Reform Statutes"), and the doctrines of judicial estoppel, res judicata, and collateral estoppel.

### A. Michigan Tort Reform Statutes

Defendant argues that the prior judgment obtained by Plaintiff against the Bender Defendants constituted an allocation of 100% of the fault for Plaintiff's damages and therefore Plaintiff is precluded from attempting to reallocate those damages against Defendant. (Def.'s Mot. Br. at 3.) Defendant relies on the Michigan Tort Reform Statutes, which abolished joint and several liability in most situations. (*Id.* at 4.) Plaintiff contends that the Michigan statutes requiring an allocation of fault are not applicable in this case. (Pl.'s Resp. at 3.) Specifically, Plaintiff argues that no allocation of fault was or could have been made against Defendant in the prior case, that Plaintiff's claim for damages are different than those sought in the prior case, and that even assuming a single indivisible injury, the judgment against the Bender Defendants has not been satisfied. (*Id.* at 3-12.) Plaintiff also contends that even if the Michigan Tort Reform Statutes are generally applicable, these statutes would not apply to its claim for conversion and unjust enrichment. (*Id.* at 12-16.)

11

Michigan's Tort Reform Statutes "generally abolished joint and several liability and replaced it with 'fair share liability' where each tortfeasor only pays the portion of the total damages award that reflects that tortfeasor's percentage of fault." *Bell v. Ren-Pharm, Inc.*, 713 N.W.2d 285, 287 (Mich. Ct. App. 2006) (quoting *Markley v. Oak Health Care Investors of Coldwater, Inc.*, 660 N.W.2d 344 (Mich. 2003)); *see also* Mich. Comp. Laws § 600.2956 ("Except as provided in section 6304, in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint."). The tort reform statutes, Mich. Comp. Laws §§ 600.2957 and 600.6304, "generally provide that the trier of fact in a tort action shall determine the comparative negligence of each person who contributed to the plaintiff's injury, regardless of whether that person is, or could have been, named as a party." *Barnettt v. Hidalgo*, 732 N.W.2d 472, 481 (Mich. 2007). Mich. Comp. Laws § 600.2957 states:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

> (2) Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an amended pleading alleging 1 or more causes of action against that nonparty. . . .

> (3) . . . Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action.

Under Mich. Comp. Laws § 600.6304, a court sitting without a jury is required to make findings as to the total amount of each plaintiff's damages and the "percentage of the total fault of all persons that contributed to the death or injury . . . regardless of whether the person was or could have been named as a party to the action." *Id.* § 600.6304(1). "Fault" is defined as "an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party." *Id.* § 600.6304(8).

In Judge Edmunds' order granting Medilink's unopposed motion for summary judgment, she entered judgment against the Bender Defendants "jointly and severally, in the amount of Four Million, Seven Hundred and Forty-Nine Thousand, Nine Hundred and Twenty ($4,749,920.00) Dollars." (Def.'s Mot. Ex. 15.) She found that "Defendants have committed fraud and obtained money from the Plaintiff in that amount." (*Id.*) In the judgment, Judge Edmunds ruled that "Defendants are required, jointly and severally, to pay Plaintiff Four Million, Seven Hundred and Forty-Nine Thousand, Nine Hundred and Twenty ($4,749,920.00) Dollars." (Def.'s Mot. Ex. 2.) Defendant argues that this prior judgment constitutes a 100% allocation of the fault for Plaintiff's damages, precluding the present claims against Defendant. (Def.'s Mot. Br. at 3.) The court disagrees.

Judge Edmunds' order does not expressly allocate fault. A finding that the Bender Defendants were jointly and severally liable for approximately $4.7 million based on the fraud means that Plaintiff could recover $4.7 million from either John P. Bender, J.P. Bender and Associates, Inc., or Bender, Inc. It does not necessarily mean that

13

100% of the fault in this case was allocated to the Bender Defendants.[3]  Indeed, Judge Edmunds could not have allocated fault to any other party because the Bender Defendants never provided a notice of nonparty at fault.  Under Michigan Court Rule 2.112(K), a defendant must provide a nonparty with "notice of a claim that a nonparty is wholly or partially at fault."  M.C.R. 2.112(K)(3)(a).  Unless notice has been provided, "the trier of fact shall not assess the fault of a nonparty."  M.C.R. 2.112(K)(2).  This rule would have applied to the prior case before Judge Edmunds because it is substantive, rather than procedural, under the *Erie* doctrine.  *Greenhich Ins. Co. v. Hogan*, 351 F. Supp. 2d 736, 739 (W.D. Mich. 2004).  Thus, Judge Edmunds could not have assessed fault against any other entity besides the Bender defendants.  Because Judge Edmunds could not have allocated fault to another party and because the judgment does not state the percentage of fault that was allocated, the prior judgment does not necessarily mean that Judge Edmunds determined the Bender Defendants to be 100% at fault and Comerica Bank 0% at fault.

Moreover, even if Judge Edmunds did make a finding regarding nonparty Comerica's fault, it would not be binding in future litigation.  Mich. Comp. Laws § 600.2957(3) states that "[a]ssessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties."  If the court assesses fault

---

[3]For instance, Defendant states that Judge Edmunds' "order and Judgment constitutes the U.S. District Court's express finding based on the record established by Medilink that *only* the three (3) Bender Defendants were at fault for the entirety of Medilink's damages, and that their fault is to be apportioned among these parties, jointly and severally."  (Def.'s Mot. Br. at 9 (emphasis added).)  Only the second part of this assertion is a correct statement.  Although Judge Edmunds found the Defendants jointly and severally liable for the $4.7 million fraud, a review of the record reveals no mention of the word *only* in Judge Edmunds' findings.

against a nonparty, this "finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action." *Id.* The statute contemplates future lawsuits and makes any prior determination of fault inadmissible. Thus, any finding of fault against Comerica in Judge Edmunds' case could not be used in the present case. It would be a strange result if the implicit finding of no fault against Comerica in the prior case, as argued by Defendant, could be used as evidence in this case and preclude this litigation, when an express finding of fault in the prior action would not be admissible and would not subject Comerica to liability.

Nonetheless, while the precise actions that give rise to the present action differ from those in the previous action, a review of Plaintiff's complaint makes clear that a large portion of the damages it seeks in the present case constitute part of the $4.7 million judgment in the prior case. Medilink explains that its claims are based on actions by Comerica after the theft by Bender which "led to losses by Medilink because Comerica made it more difficult or impossible to recover against Bender." (Pl.'s Resp. at 3.) It further explains that, "The total of the thefts as reflected in the judgment was $4,749,920 . . . Medilink seeks damages for monies which had already been stolen by Bender but which could have been returned to Medilink if Comerica had not breached the duties alleged in Plaintiff's Complaint." (Pl.'s Resp. at 7.) Specifically, Medilink seeks damages for allowing Bender to empty the Medilink Bender Accounts after they were initially frozen ($790,000), and for accepting money that it allegedly knew rightfully belonged to Medilink ($380,193.50 as payment on a loan and $350,000 to fund the Cash Collateral Account).

These amounts would have been a part of Plaintiff's total loss from the Bender

fraud and included in the prior judgment amount of $4,749,920.00, and it is well-settled that a plaintiff is generally entitled to one recovery for a single injury. *Markley v. Oak Health Care Investors of Coldwater, Inc.*, 660 N.W.2d 344, 346-47 (Mich. Ct. App. 2003). At common law, "while the plaintiff may pursue compensation for the injury from any or all of the defendants, the plaintiff is entitled to only one satisfaction." *Kaminski v. Newton*, 438 N.W.2d 915, 916 (Mich. Ct. App. 1989). This "common-law prohibition against more than one satisfaction is codified in M.C.L. § 600.2925c(5)." *Id.* at 917. This statute provides, "The recovery of a judgment for an injury of wrongful death against 1 tort-feasor does not of itself discharge the other tort-feasors from liability for the injury or wrongful death unless the judgment is *satisfied*." Mich. Comp. Laws § 600.2925c(5); *see also Gerling Konzern Allgemeine Versicherungs AG v. Lawson*, 693 N.W.2d 149 (Mich. 2005). In this case, Plaintiff has presented evidence, which Defendant does not dispute, that it has not recovered, or even nearly recovered, the full amount of the prior judgment. Thus, the prior judgment has not been *satisfied*, and a potential judgment in this case would not lead to Plaintiff being compensated for more than it was injured.

Moreover, there is an additional amount of damages at stake in this case that was not determined in the prior case. One of Plaintiff's causes of action is for statutory conversion. Under Mich. Comp. Laws § 600.2919a:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> > (a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

"Actual damages" is defined as "the actual loss a complainant suffered as a result of a defendant's criminal conduct." *Alken-Ziegler, Inc. v. Hague*, 767 N.W.2d 668, 671 (Mich. Ct. App. 2009).

Plaintiff seeks actual damages in the amount of $730,193.50 ($380,193.50 which paid down the Bender loan and $350,000 which funded the Cash Collateral Account pursuant to the forbearance agreement). Even if this amount was included in the prior judgment, if a jury was to find that Plaintiff suffered these damages as a result of Defendant's conversion, then Plaintiff would be eligible to recover three times that amount, $2,190,580.50. The statute expressly states that this remedy is in addition to any other right or remedy. Mich. Comp. Laws § 600.2919a. Further, this amount was not included in the prior judgment as Judge Edmunds did not rule on the conversion count. Plaintiff is potentially liable for conversion because the statute imposes liability on one who receives stolen, embezzled, or converted property when that person knew it was stolen, embezzled, or converted. Mich. Comp. Laws § 600.2919a. Thus, Plaintiff could be awarded damages in this case that were not included in the prior judgment.

Defendant argues that "Judge Edmunds *denied* Medilink summary judgment on its conversion and other claims against Bender, thus adjudicating, among other things, that funds debited from Bender's accounts did not constitute conversion even though

the disbursements were made to Bender and third parties." (Def.'s Reply at 3 (emphasis in original).) First, Judge Edmunds did not deny Medilink's motion for summary judgment on its conversion claim. She stated, "And I'm not comfortable saying that they involve conversion, although conversion seems a closer case to me . . . we'll leave out the embezzlement and conversion points. *I'm just going to not rule on those* . . . ." (Def.'s Mot. Ex. 14 at 4 (emphasis added).) Second, even if she did deny Medilink's motion for summary judgment on the conversion claim, it would not constitute an adjudication that Bender was not liable for conversion. Instead, it would merely mean that, in viewing the evidence in the light most favorable to Bender, Medilink was not entitled to judgment as a matter of law on that claim. *See* Fed. R. Civ. P. 56. If the case had proceeded to trial, Bender could have still been found liable for conversion.

Both parties also focus on whether the fault allocation under the Michigan Tort Reform Statutes applies to statutory conversion claims. Plaintiff cites *John Hancock Financial Servs., Inc. v. Old Kent Bank*, 346 F.3d 727 (6th Cir. 2003), in which the Sixth Circuit held that Michigan's Tort Reform Statutes did not apply to UCC conversion claims. 346 F.3d at 732. The UCC conversion statute in *Old Kent Bank* expressly provided for a fault allocation in cases of forged instruments, placing it in conflict with the fault allocation of the Michigan Tort Reform Statutes. *Id.* The conversion statute at issue in this case, however, does not have a provision allocating fault, but instead provides for an additional amount of damages that can be awarded; thus, it is not in conflict with the Michigan Tort Reform Statutes. *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 414 (6th Cir. 2006) (statutory misappropriation case) ("*Old Kent Bank* does not govern the outcome of this claim . . . because [the Michigan Tort Reform

18

Statutes] concern[] the allocation of liability, as opposed to the kinds of damages a misappropriation plaintiff can recover.").  The issue of whether fault can be allocated under a statutory conversion claim would be relevant to whether Defendant could lessen its liability by having fault allocated to other parties.[4]  It does not go to the threshold issue of whether Plaintiff's statutory conversion claim is precluded based on the prior judgment.  Because Judge Edmunds did not rule on the conversion claim and because additional damages could be awarded if Defendant was found liable for conversion, the court concludes that the prior judgment does not preclude Plaintiff's claim.

Plaintiff also brings claims for unjust enrichment and constructive trust, and the court finds that these claims would not be precluded by the prior judgment.  The elements of unjust enrichment are "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant."  *Hudson v. Mathers*, 770 N.W.2d 883, (Mich. Ct. App. 2009) (citing *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271 (Mich. 2003)).  If these elements are met, then a contract will be implied in order to prevent unjust enrichment.  *Id.*  A constructive trust is an equitable remedy and may be imposed "when necessary to do equity or avoid unjust enrichment."  *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 907 (Mich. Ct. App. 2006) (citing *Kammer Asphalt Paving Co., Inc. v. East China Tp. Schools*, 504 N.W.2d 635 (Mich. 1993)).  "A constructive trust may thus be imposed

---

[4]On December 18, 2009, Defendant filed a notice of nonparty fault naming the Bender Defendants, among others, as non-parties who may be wholly or partially at fault for the damages sought by Plaintiff in this case.

under any circumstance that renders it unconscionable for the holder of legal title to retain and enjoy the property." *Id.* "The constructive trust, as it was put by Mr. Justice Cardozo, 'is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. . . .'" *Kent v. Klein*, 91 N.W.2d 11, 14 (Mich. 1958).

As an initial matter, these claims would not be subject to the Michigan Tort Reform Statutes. They are not tort actions or actions based on "another legal theory seeking damages for personal injury, property damage, or wrongful death." Mich. Comp. Laws § 600.2957. Moreover, a prior fraud judgment against another party would not preclude these claims. For instance, suppose A commits fraud against B, and then C, knowing that A obtained property from B as a result of fraud, accepts the property. B should be entitled to obtain a judgment against the person who committed the fraud, A, for the full amount of the fraud. However, often times, the fraud perpetrator has disappeared or is judgment-proof. The law therefore permits B to recover its property from C, who "may not in good conscience retain the beneficial interest of the property" that he knew was obtained by fraud. *Id.* Although as discussed above, B is entitled to recover only once for the amount of his loss, equitable principles allow him to pursue C.

Defendant relies on two unpublished decisions from the Michigan Court of Appeals, *Stanke v. Stanke*, No. 263446, 2008 WL 216071 (Mich. Ct. App. Jan, 24, 2008) and *K-Mart Corp. v. Logan*, No. 232393, 2003 WL 21583385 (Mich. Ct. App. July 10, 2003). In *K-Mart*, a former real estate lawyer for K-Mart embezzled money conducting real estate transactions. 2003 WL 21583385, at *2. The real estate lawyer

pleaded guilty to embezzlement, and K-Mart sued him in a civil action, which was dismissed.  *Id.*  K-Mart then sued the real estate lawyer as well as persons it alleged assisted him, including his ex-wife and members of his family.  *Id.*  Summary judgment was granted as to the real estate lawyer, and the Court of Appeals therefore held the case against the remaining defendants must be dismissed.  *Id.* at *3.  It stated, "Because plaintiff has already received a judgment against [the real estate lawyer] assessing all liability to him for plaintiff's damages, there is no liability to be apportioned among defendants; therefore, this case must be dismissed."  *Id.*

In *Stanke*, the plaintiff filed a lawsuit against a trustee and the law firm that drafted the trust documents.  2008 WL 216071, at *2.  The trustee never appeared, and the plaintiff "obtained a default judgment against her for the full amount of the funds she wrongfully depleted from the trust."  *Id.*  The trial court then granted the law firm's motion for summary judgment.  *Id.* at *2.  On appeal, the plaintiff argued that the clerk's entry of default judgment "did not meet the statutory requirement that the trial court 'allocate' fault as between [trustee] and [law firm] as required by statute."  *Id.* at *5.  The court rejected this argument, finding that the trial judge was not required to allocate fault because the parties waived that requirement by agreeing otherwise.  *Id.*  The court then held that: "Plaintiff affirmatively requested that the court enter judgment against [trustee] for the full amount alleged in its complaint.  When the trial court did so, there remained no more fault to be apportioned to the [law firm]."  *Id.*

The court finds that *K-Mart* and *Stanke* do not preclude Plaintiff's claims in this case.  In both *K-Mart* and *Stanke*, unlike in this case, the party who was allocated 100% of the fault was actually in the case, and thus a finding that this party was completely

responsible for the damages in the complaint necessarily meant that the other parties to the case were not responsible for those same damages under comparative fault principles.  An example of a valid argument under *K-Mart* and *Stanke* would be if Judge Edmunds had found that John Bender was responsible for 100% of the damages in the earlier case, in which case J.P. Bender Associates, Inc. and Bender, Inc. could have successfully argued that there were no more damages to award against them.  In contrast, no damages could have been assessed against Comerica in the earlier case in which it was not a party.  Moreover, the damages assessed against the Bender Defendants for their fraud do not encompass the full amount of damages Plaintiff seeks in this case because it requests treble damages based on statutory conversion, which was not ruled upon in the prior case.  The court thus finds that Plaintiff's claims are not precluded by the earlier judgment against the Bender Defendants for fraud.

## B. Judicial Estoppel

Defendant argues that Plaintiff "judicially admitted that *only* the three (3) Bender Defendants are 100% 'jointly and severally' at fault for Medilink's damages" and they are judicially estopped from taking a "wholly inconsistent position."  (Def.'s Mot. Br. at 12 (emphasis added).)

"Under the doctrine of judicial estoppel, a party that has unequivocally and successfully set forth a position in a prior proceeding is estopped from setting forth an inconsistent position in a later proceeding."  *Detroit Intern. Bridge Co. v. Commodities Export Co.*, 760 N.W.2d 565, 572 (Mich. Ct. App. 2008).  This doctrine is "is intended to maintain the consistency of court rulings and to keep litigants from playing 'fast and loose' with the legal system."  *Morales v. State Farm Mut. Auto. Ins. Co.*, 761 N.W.2d

454, 464 (Mich. Ct. App. 2008). It is "an equitable doctrine that the Court may raise to preclude inconsistent judicial rulings." *Wolverine Power Coop v. Dep't of Environ. Quality,* --- N.W.2d ----, 285 Mich. App. 548 (Mich. Ct. App. 2009). The doctrine is applied "to prevent a party 'from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.'" *Opland v. Kiesgan*, 594 N.W.2d 505, 511-12 (Mich. Ct. App. 1999) (quoting *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir. 1998)).

In its motion for summary judgment in the prior case, Plaintiff requested summary judgment "against the [Bender] Defendants jointly and severally, in the amount of $4,749,920.00 trebled to $14,249,760.00" based on "fraudulent misrepresentation, embezzlement and conversion." (Def.'s Mot. Ex. 13.A at 1, 21.) Contrary to Defendant's repeated assertions, Plaintiff never stated that *only* the Bender Defendants were liable. Nor did Plaintiff ever state that the Bender Defendants were 100% liable for its overall damages. The court does not find Plaintiff's position in this case inconsistent with the prior case or that Plaintiff is "playing 'fast and loose' with the legal system." *Morales*, 761 N.W.2d at 464.[5] Accordingly, the court will not apply the equitable

---

[5] Indeed, when the court searches Defendant's brief for factual support in this regard, it finds nothing more than unsupported assertions. For example, Defendant's statement that "Medilink judicially admitted and argued in 07-cv-15019 that *only* the three (3) Bender Defendants are liable for its damages, and that 100% of the fault should be allocated between and among those parties only, jointly and severally," Def.'s Mot. Br. at 12 (emphasis added), is accompanied by absolutely no citation to the record. Nor is there any citation supporting Defendant's statement that "Medilink clearly, unequivocally and successfully argued to the satisfaction of a federal district court judge that *only* the three (3) Bender Defendants were jointly and severally liable for the entirety of Medilink's damages based on uncontested facts" Def.'s Mot. Br. at 14 (emphasis added). Defendant comes closer in its statement of fact # 18, in which it asserts that "Medilink's First Amended Complaint alleged that it was *only* 'John P.

23

doctrine of judicial estoppel.

## C. Res Judicata and Collateral Estoppel

Defendant argues that the doctrines of res judicata and collateral estoppel bar Plaintiff's action.  (Def.'s Mot. Br. at 14-18.)

### 1. Res Judicata

The doctrine of res judicata bars a subsequent action when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Estes v. Titus*, 751 N.W.2d 493, 499 (Mich. 2008) (quoting *Dart v. Dart,* 597 N.W.2d 82 (Mich. 1999)).  Res judicata "bars all matters that with due diligence should have been raised in the earlier action." *Id.*

Defendant's res judicata argument is without merit.  Defendant makes no claim that it is a privy to the Bender Defendants.  Thus, res judicata does not apply to this case because it does not "involve the same parties or their privies" as the previous action.  *Estes*, 751 N.W.2d at 499.

---

Bender,' 'J.P. Bender And Associates, Inc.' and 'Bender, Inc.' as the 'Defendants' who were 'jointly and severally' liable for all of Medilink's damages."  [Appdx. Ex-7, pg. 1, pg. 2, ¶2; see also ¶¶8-19], Def. Stmt of Fact  #18 (emphasis added), but even there Defendant tellingly omits the pivotal term, "only," from the quoted material while citing in support nothing more than Plaintiff's complaint against the Bender defendants (which, as earlier noted, does not use the word "only" or any equivalent concept of *exclusive* liability that Defendants here purport).

The court imagines a parallel situation in a criminal case in which a subsequently-identified and charged defendant tries to argue that the government cannot properly proceed against him because it had originally charged that defendant #1 also was guilty.  The possibility must be recognized, in criminal and civil law, that there may be multiple theories of proceeding against varied individuals within the same general factual setting.  While there is no support for the proposition that Plaintiff is "playing fast and loose," the court is less sure about Defendant.

**2. Collateral Estoppel**

The doctrine of collateral estoppel "bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *Leahy v. Orion Township*, 711 N.W.2d 438, 441 (Mich. Ct. App. 2006) (per curiam).  The elements are: "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Estes*, 751 N.W.2d at 499.  However, "where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 852 (Mich. 2004).

Defendant conclusively states that "elements one and two are easily established," and devotes the majority of its discussion of the collateral estoppel issue to the mutuality requirement.  (Def.'s Mot. Br. at 16-18.)  But as held by the Michigan Supreme Court in *Monat*, mutuality of estoppel is not required when collateral estoppel is being asserted defensively, as in this case.  *Monat*, 677 N.W.2d at 852.

On the issue of a question of fact essential to the judgment that was "actually litigated and determined," Defendant appears to argue that three questions of fact have been actually litigated and determined in the prior action.  First, Defendant states that "Medilink created an extensive record in 07-cv-15019 with its summary judgment motion that requested, *inter alia*, that damages be allocated against the Bender Defendants *only*."  (Def.'s Mot. Br. at 16 (emphasis added).)  As explained above, Plaintiffs never

25

used "only" when requesting an allocation of damages. The issue that was litigated and determined in the earlier case was that the Bender Defendants committed fraud and were liable for approximately $4.7 million in damages.

Second, Defendant states that "Judge Edmunds denied Medilink summary judgment on its conversion and other claims against Bender, thus adjudicating, among other things, that funds debited from Bender's accounts did not constitute conversion even though the disbursements were made to Bender and third parties." (Def.'s Reply at 3.) It argues that "[i]f Bender, the admitted thief, cannot be liable for conversion and the other theories of liability alleged against him," then the preclusion doctrines bar this action. (*Id.*) Both of these statements are incorrect – Judge Edmunds never explicitly denied Medilink's motion for summary judgment and Bender, "the admitted thief," could have been liable for conversion if the case proceeded to trial. As discussed above, even if Judge Edmunds had denied Medilink's motion for summary judgment on the conversion claim, it would not constitute an adjudication given the summary judgment standard under Federal Rule of Procedure 56. Thus, the conversion issue was not litigated and determined in the prior case.

Third, Defendant argues that because Plaintiff never accused Defendant of violating the temporary restraining orders in the prior case, the court must "assume that . . . there had been no such violation." (*Id.* at 4.) The court need not make this assumption and finds that whether or not the temporary restraining orders were violated was not "actually litigated and determined" in the prior case. It simply was never raised. The only claim that was litigated and determined in the prior case was that the Bender Defendants committed fraud and were required to pay approximately $4.7 million based

on that fraud.[6]

## IV.  CONCLUSION

For the reasons above, IT IS ORDERED that Comerica Bank's motion for

summary judgment [Dkt. # 18] is DENIED.


   S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  February 17, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 17, 2010, by electronic and/or ordinary mail.

   S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

---

[6] Moreover, it does not appear that Plaintiff is asserting any violation of the
temporary restraining orders in this case.  Defendant states that "the act of Comerica
not 'returning' the money to Medilink would have constituted a violation of one or both
T.R.O.s (It is undisputed that by the time Medilink belatedly obtained and served the
T.R.O.s, Bender's accounts were almost empty.)"  (*Id.*)  Defendant's parenthetical
negates its argument.  If the Bender accounts were practically empty when the
temporary restraining orders were served, then it would appear that Plaintiff is alleging
that the breaches alleged in this case occurred before the temporary restraining orders
were entered, and thus the orders would not have been violated.  Plaintiff's conversion
claims are premised on the transfers in October 2007, before the case against the
Bender Defendants was filed.